IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GINA ANDRIST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 19 C 2428 |
| | ) |
| HONEYWELL INTERNATIONAL, INC., et al., | ) Magistrate Judge Finnegan |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gina Andrist brought this products liability case under strict liability and negligence theories, claiming that Defendants Honeywell International Inc., Honeywell Safety Products USA, Inc., and all other named Honeywell defendants (together, "Honeywell") are responsible for injuries she sustained while wearing a defective Miller MiniLite FL11 Self-Retracting Lifeline. Honeywell removed the case to federal court based on diversity jurisdiction (Doc. 1), and the parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 19). Currently before the Court is Honeywell's motion for summary judgment on all claims. For the reasons stated below, the motion is granted.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-movant's favor. *Barbera v.*

*Pearson Education, Inc.*, 906 F.3d 621, 628 (7th Cir. 2018). That said, "the opposing party cannot rely on mere conclusions and allegations to create factual issues," and "[a] court will grant summary judgment if no reasonable trier of fact could find in favor of the non-moving party." *Santiago v. Rabideau*, No. 15 C 1856, 2019 WL 1747361, at *2 (N.D. Ill. Apr. 18, 2019) (citing *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003) and *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012)).

In the Northern District of Illinois, Local Rule 56.1 requires a party moving for summary judgment to submit a statement of material facts consisting of concise numbered paragraphs that are "supported by citation to the specific evidentiary material . . . that supports it." N.D. Ill. R. 56.1(a), (d). *See also Reyes v. Menard, Inc.*, No. 21 C 359, 2022 WL 2757666, at *1 (N.D. Ill. July 14, 2022). The opposing party then must file "a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the affidavits, parts of the record, and other supporting materials relied upon." *Santiago*, 2019 WL 1747361, at *2 (quoting *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) and N.D. Ill. R. 56.1(b)(3)(B)). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted).

Plaintiff did not file any response to Honeywell's motion for summary judgment or challenge the facts set forth in Defendants' Local Rule 56.1(a)(3) Statement of Undisputed Material Facts (Doc. 78). This failure to respond does not result in an automatic grant of summary judgment, as there is no summary judgment by default. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Atlantic Cas. Ins. Co. v.*

2

*ABC Constr. Specialists Inc.*, No. 18 C 1256, 2018 WL 11190999, at *3 (N.D. Ill. Aug. 29, 2018). Rather, the facts set forth in Honeywell's Local Rule 56.1 statement are deemed admitted to the extent the cited exhibits and depositions support them. *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citing *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 634 (7th Cir. 2005)). Honeywell still bears the burden of persuasion that it is entitled to judgment as a matter of law, and the facts must still be viewed in the light most favorable to Plaintiff. *See Keeton*, 667 F.3d at 884 (citations omitted); *Raymond*, 442 F.3d at 608. The facts discussed in this opinion are those the Court has deemed supported by the record.

## FACTUAL BACKGROUND

The events giving rise to this lawsuit occurred while Plaintiff was working for non-party W.W. Grainger ("Grainger") as an "order picker" (a person who retrieves products from shelves) at the company's facility in Minooka, Illinois. (Doc. 78, ¶ 1). In that position, Plaintiff used two relevant pieces of equipment: a "Multi-Level" (a mobile device that contains a platform that can be elevated, sometimes referred to as a "cherry picker") and a Miller MiniLite FL11 Self-Retracting Lifeline (the "Miller MiniLite"), a product designed to arrest and stop a person from free falling off the elevated platform. (*Id.* ¶¶ 3, 5, 33, 34; Doc. 1-1 ¶ 5). A picture of the Miller MiniLite model that was affixed to Plaintiff at the time of the incident is provided below:



(Doc. 78, ¶ 32).

On March 6, 2017, Plaintiff was standing on a Multi-Level and wearing a full-body harness that had a D-ring on the back between her shoulders to which she affixed the snap hook of the Miller MiniLite. The Miller MiniLite, in turn, was anchored above Plaintiff's head. (*Id.* ¶¶ 18-20). At some point Plaintiff attempted to slide a 90-pound box off a shelf but the contents broke through the bottom and caught on the shelf. (*Id.* ¶¶ 21, 22). When Plaintiff pulled on the box, it came loose and pulled her arms down, causing her to bend over the side of the Multi-Level platform before letting go of the box. (*Id.* ¶ 23). Plaintiff never fell from the platform but bent over too quickly and "pulled her back/buttocks." (*Id.* ¶¶ 4, 24, 26).

Though Plaintiff did not fall off the Multi-Level elevating platform, she filed suit against Honeywell in Grundy County Circuit Court alleging that she "suffered bodily injuries" after the Miller MiniLite failed to stop a purported fall. She alleges that her injuries stem from a design defect in the Miller MiniLite and seeks to hold Honeywell responsible

4

under theories of strict liability and negligence. (Doc. 1-1). On April 10, 2019, Honeywell removed the case to federal court based on diversity jurisdiction, noting that Plaintiff is a citizen of Illinois and the Honeywell entities are Delaware corporations with their principal places of business in New Jersey and South Carolina. (Doc. 1, ¶¶ 6-11). Honeywell argues that it is entitled to summary judgment because Plaintiff failed to secure expert testimony supporting her claim of a design defect and, in any event, the Miller MiniLite is not defective or unreasonably dangerous.

## DISCUSSION

### I. Lack of Expert Testimony

To succeed on either her strict liability or negligence claims, Plaintiff must demonstrate that there was a defect in the Miller MiniLite at the time it left Honeywell's control, and that the defect caused her injury. *See Horne v. Elec. Eel Mfg. Co.*, Inc., 987 F.3d 704, 725 (7th Cir. 2021). Honeywell argues that Plaintiff cannot make such a showing because she failed to present the necessary expert testimony on those issues. (Doc. 77, at 13-15). Illinois courts recognize that products liability actions "often involve specialized knowledge or expertise outside the layman's knowledge." *Stevenson v. Windmoeller & Hoelscher Corp.*, No. 19 C 52, 2021 WL 1978348, at *3 (N.D. Ill. May 18, 2021) (collecting cases), *aff'd,* 39 F.4th 466 (7th Cir. 2022). For this reason, courts require expert testimony "in at least some products liability cases to prove that a product defect was unreasonably dangerous and proximately caused the plaintiff's injuries." *Id.* (quoting *Show v. Ford Motor Co.*, 697 F. Supp. 2d 975, 982 (N.D. Ill. 2010), *aff'd*, 659 F.3d 584 (7th Cir. 2011)). While an expert may not be needed to tell people how to use a simple device such as a walking crutch or a chair that collapses for portability, other products are

sufficiently complex that they cannot be evaluated exclusively on the basis of common experience, such as a vehicle's airbag or a surgical implant device. *Show*, 697 F. Supp. 2d at 983; *Clark v. River Metals Recycling, LLC*, 929 F.3d 434, 440 (7th Cir. 2019).

The Miller MiniLite is an industrial product that most of the population and lay jurors do not commonly see or use. Unlike a chair or walking crutch, it is a specialized piece of equipment designed for use in industrial settings by trained employees to prevent falls from elevated platforms. In that regard, as part of her orientation at Grainger, Plaintiff received specific training on the use and operation of the Miller MiniLite. (Doc. 78, ¶¶ 5-7). Since common experience is not alone sufficient to understand the proper use of the Miller MiniLite, Plaintiff needed to present expert testimony to show that the device is unreasonably dangerous as designed and caused her injuries. *See Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 836, 557 N.E.2d 580, 590 (1st Dist. 1990) (expert testimony required to establish that the design of a car transmission jack was unreasonably dangerous). She did not, and this is fatal to her claims. *See Clark*, 929 F.3d at 440; *Kirk v. Clark Equip. Co.*, 991 F.3d 865, 879 (7th Cir. 2021) (affirming summary judgment on design defect claims where the plaintiff lacked admissible expert testimony regarding the design of a wheeled front-end loader, which the court deemed "a specialized piece of industrial equipment that falls outside of a juror's common understanding and experiences.").

## II.   Substantive Arguments

Although Defendants are entitled to summary judgment based on Plaintiff's failure to retain an expert, her strict liability and negligence claims also fail on substantive grounds. "It is well established that, to recover in a strict product liability action, a plaintiff

must plead and prove that (1) the injury complained of resulted from a condition of the product, (2) the condition was unreasonably dangerous, and (3) the condition existed at the time the product left the manufacturer's control." *Gillespie v. Edmier*, 2020 IL 125262, ¶ 10, 182 N.E.3d 54, 57-58, *reh'g denied* (Jan. 25, 2021).

To show a product was defectively designed and recover under a theory of negligence, Plaintiff must prove that "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) the plaintiff suffered damages." *Gutterman v. Target Corp.*, 242 F. Supp. 3d 695, 704 (N.D. Ill. 2017). *See also Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007). The "crucial question" in a negligent-design case is "whether the manufacturer exercised reasonable care in the design of the product." *Id.* (quoting *Calles v. Scripto-Tokai Corp.*, 224 Ill. 2d 247, 270, 864 N.E.2d 249, 264 (2007)). *See also Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 83. A successful claim under a negligence theory rests on the concept of fault. "Fault can exist when the defendant knew or should have known of the risk posed by the product design at the time of manufacture." *Suarez v. W.M. Barr & Co.*, 842 F.3d 513, 523 (7th Cir. 2016) (internal citations and quotations omitted). This duty to exercise reasonable care "does not require the product to reflect the safest design possible or be incapable of causing injury." *Couture v. Haworth, Inc.*, No. 16 C 4153, 2020 WL 70931, at *4 (N.D. Ill. Jan. 7, 2020) (quoting *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 501, 932 N.E.2d 101, 111 (1st Dist. 2010)).

Plaintiff has not presented evidence to establish the necessary elements of either claim.

### A. The Miller MiniLite Did Not Cause Plaintiff's Injuries

Plaintiff cannot satisfy the causation elements of her claims because it is undisputed that her injuries were entirely unrelated to the Miller MiniLite or its operation. Honeywell retained expert Paul Gantt, Ph.D., a Certified Safety Professional ("CSP") with over 40 years of experience working in the areas of safety, health, and regulatory compliance, to provide an affidavit and report regarding the March 6, 2017 incident and the functioning of the Miller MiniLite. (Doc. 78, ¶¶ 37, 38). Mr. Gantt opined that the only "foreseeable and intended use" of the Miller MiniLite is to stop and prevent a free fall without restricting user mobility. (*Id.* ¶ 40; Doc. 76-7, Gantt Aff., ¶ 14). Honeywell's technical training specialist Mark Cangemi, CSP, likewise testified that the device "is only designed to activate and arrest a fall during an actual fall, not general movement." (Doc. 76-5, at 49, Cangemi Dep., at 48; Doc. 78, ¶¶ 43, 44). And the Miller MiniLite user manual clearly states that the device is "designed for fall arrest applications only," and should "never" be used "as a restraint or positioning device." (Doc. 78, ¶ 34).

Here, Plaintiff admits that she never actually fell while wearing the Miller MiniLite. During her deposition, she affirmatively stated that "I did not fall off of my machine [the Multi-Level platform]," and then repeatedly confirmed that testimony: "Q. You didn't fall off the platform, correct? A. Correct. . . . Q. You did not free-fall on the day of the incident, correct? A. Correct. . . . Q. Again, you didn't free fall, correct? A. Correct. . . . Q. Once again, there was no free-fall, correct? A. Correct. Q. So any claim made in your Complaint that you were injured as a result of a free-fall is incorrect? A. Correct." (Doc. 76-4, at 119, 121, 141-42, Plaintiff Dep., at 117, 119, 139-40; Doc. 78, ¶ 26). The injuries

8

Plaintiff sustained to her lower back and buttocks instead occurred when she bent over too quickly while handling a 90-pound box. (Doc. 78, ¶¶ 4, 24).

Notably, Plaintiff concedes that the Miller MiniLite is not supposed to stop her from bending over, which is a necessary part of her order picker job. (*Id.* ¶¶ 10, 16, 17). Moreover, in her written and verbal reports to her supervisor after the incident, Plaintiff did not identify any issue with the Miller MiniLite, nor did she attribute her injuries to either the device or a fall. (*Id.* ¶¶ 9, 29). In such circumstances where the Miller MiniLite never needed to engage because Plaintiff did not experience a free-fall, no reasonable jury could conclude that her injuries resulted from a condition of the Miller MiniLite as required to prove a strict liability claim, *Gillespie*, 2020 IL 125262, ¶ 10, or that the device was the proximate cause of her injuries as required to prove a negligence claim. *Gutterman*, 242 F. Supp. 3d at 704.

### B. There is No Evidence That the Miller MiniLite is Unreasonably Dangerous

Plaintiff also has presented no evidence that the Miller MiniLite is unreasonably dangerous in its design. To prove this element of her strict liability claim, Plaintiff may provide evidence that the product fails to satisfy either the "consumer-expectation test" or the "risk-utility test." *Gutterman*, 242 F. Supp. 3d at 705. "The consumer expectation test asks whether a product 'failed to perform as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.'" *Id.* at 705-06 (quoting *Calles*, 224 Ill. 2d at 256, 864 N.E.2d at 256).

Under the risk-utility test, the utility of the product's design is weighed against the risk of harm created; if the likelihood and gravity of the product's harm outweigh its benefits and utilities, it is unreasonably dangerous. *Gillespie*, 2020 IL 125262, ¶ 10;

*Calles*, 224 Ill. 2d at 259, 864 N.E.2d at 257. Factors that may be relevant to this analysis include evidence of "(1) the availability and feasibility of alternate designs at the time of the product's manufacture; or (2) that the design used did not conform to the design standards in the industry, design guidelines provided by an authoritative voluntary organization, or design criteria set by legislation or governmental regulation." *Jablonski*, 2011 IL 110096, ¶ 85 (citing *Calles*, 224 Ill. 2d at 263-64, 864 N.E.2d at 260). Other factors to consider are "the utility of the product to the user and to the public as a whole, the safety aspects of the product including the likelihood that it will cause injury and the probable seriousness of the injury, and the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility." *Id.* See also *Mikolajczyk v. Ford Motor Co.,* 231 Ill. 2d 516, 555, 901 N.E.2d 329, 352 (2008). Notably, the risk-utility balancing test applicable to strict liability cases is also "operative in determining whether a defendant's conduct is reasonable in a negligent-design case." *Id*. ¶ 86; *Calles*, 224 Ill. 2d at 269, 864 N.E.2d at 249.

  Plaintiff has submitted no evidence suggesting that the Miller MiniLite is unreasonably dangerous under either test. Looking first to the consumer-expectation test, as noted, it is undisputed that the sole purpose of the Miller MiniLite is to arrest and prevent a person from free falling while still allowing unrestricted worker mobility. (Doc. 78, ¶ 3, 33, 37, 40, 43, 44). Plaintiff herself concedes the point. At her deposition, she testified to knowing that the Miller MiniLite was intended only to "stop you from hitting the ground if you fell off the multilevel." (Doc. 76-4, at 129, Plaintiff Dep., at 127; Doc. 78, ¶ 10). Plaintiff does not offer evidence regarding the expectations of other ordinary consumers, or argue that the Miller MiniLite did not function in accordance with those

10

expectations. Absent evidence that the Miller MiniLite failed to stop Plaintiff from falling, which is the device's only purpose, no reasonable jury could conclude that the device performed other than how an ordinary consumer would expect.

As for the risk-utility test, Plaintiff presented no expert testimony or other evidence showing that an alternative design for the Miller MiniLite was feasible, or that such alternative design would make the device safer. Nor does she identify any specific components of the product that are unsafe, or articulate how the manufacturer could eliminate those components without impairing the product's utility. Honeywell, on the other hand, produced uncontroverted evidence that the Miller MiniLite conforms to design standards in the industry and is useful and safe when utilized as intended. Mr. Gantt opined that the Miller MiniLite complies with the applicable regulatory requirements prescribed by the Occupational Safety and Health Administration, 20 C.F.R. Part 502, and by the American National Standards Institute, ANSI Z359.1 and ANSI A10.14. (Doc. 78, ¶¶ 41, 42). He also stated that the product is reasonably safe as designed and manufactured in that it has "both a shock absorber that dissipates energy to the user in the event of a fall and a braking mechanism that arrests the fall." (*Id.* ¶ 40).[1] At the time of the incident, moreover, there were no other reported issues with any of the 61 fall limiters in use at the Grainger facility, including the Miller MiniLites. (*Id.* ¶¶ 48, 49). And the Miller MiniLite does not have a "shelf life" requiring that it be changed and replaced at certain intervals. (*Id.* ¶ 47).

On balance, the relevant factors under the risk-utility test weigh entirely in Honeywell's favor. No reasonable jury could conclude that Honeywell is strictly liable for

---

[1] Of course, Mr. Gantt made clear that since "Plaintiff did not fall, neither of these features are implicated." (Doc. 78, ¶ 40).

a design defect in the Miller MiniLite, and Plaintiff's failure to present evidence sufficient to establish Honeywell's fault—that is, its deviation from ordinary care—dooms Plaintiff's negligent design defect claim as well. *See Stevenson*, 2021 WL 1978348, at *5; *Couture*, 2020 WL 70931, at *8 (granting summary judgment for defendant where plaintiff failed to present evidence of deviation from ordinary care). Honeywell's motion for summary judgment is granted.[2]

## CONCLUSION

For the foregoing reasons, Honeywell's motion for summary judgment (Doc. 75) is granted in its entirety.

ENTER:

Dated: September 14, 2022

_____
SHEILA FINNEGAN
United States Magistrate Judge

---

[2] Honeywell argues that summary judgment is also appropriate on Plaintiff's failure to warn claim. (Doc. 77, at 12-13). The only allegation in the Complaint that arguably raises such a theory of recovery is that Honeywell failed to incorporate "appropriate weight capacities into warnings for fall limiter users." (Doc. 1-1, ¶ 13a). But this allegation is false on its face, as the user manual and label on the Miller MiniLite clearly specify that the maximum weight capacity is 310 pounds, including body weight, clothing, and tools. (Doc. 78, ¶¶ 35, 36). As with her other claims, Plaintiff has not presented any evidence to establish that the Miller MiniLite has an unreasonably dangerous condition, much less that Honeywell failed to warn her about it. *Salerno*, 402 Ill. App. 3d at 499, 932 N.E.2d at 109-10. To the extent Plaintiff intended to assert a failure to warn claim, it fails as a matter of law and Honeywell is entitled to summary judgment.